479 So.2d 1089 (1985)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
v.
Betty J. ACOSTA, Individually and as Natural Guardian of Donna Acosta and Joseph Q. White, Jr., Conservator of Donna Acosta.
No. 55046.
Supreme Court of Mississippi.
October 16, 1985.
Rehearing Denied December 4, 1985.
*1090 Ernest R. Schroeder, Robert J. Dambrino, III, Carolyn Dohn, Bryan, Nelson, Allen, Schroeder & Backstrom, Pascagoula, for appellant.
C.R. McRae, Pascagoula, for appellees.
Before PATTERSON, C.J., and PRATHER and ROBERTSON, JJ.
PATTERSON, Chief Justice, for the Court:
Betty Acosta, individually and as the mother and natural guardian of Donna Acosta, sued State Farm Mutual Automobile Insurance Company to recover medical and uninsured motorists benefits under two insurance policies covering two vehicles. Donna, an insured under both automobile policies, was severely injured when hit by an uninsured motorist while driving one of the insured vehicles.
The two policies were issued separately to Betty Acosta and separate premiums were paid. They are identical in language, one covering a 1969 Toyota, involved in the accident; the other a 1978 Monte Carlo, not in the accident. Both policies provided $5,000.00 medical payment and $10,000.00 each person/$20,000.00 two or more persons per accident uninsured motorists coverage. State Farm admitted liability to Donna under the Toyota policy for the $5,000.00 medical payment benefit and $10,000.00 uninsured motorist coverage. They further admitted $10,000.00 uninsured motorist coverage due Donna under the Monte Carlo policy. Prior to suit State Farm paid a $10,000.00 uninsured motorist claim under the Toyota policy to a passenger accompanying Donna when the accident happened.
Betty claimed she was due $5,000.00 medical payment on the Monte Carlo policy as well as $10,000.00 uninsured motorists coverage under each policy. Her suit included a bad faith claim for punitive damages against State Farm.
The jury returned a verdict for State Farm on the punitive damage issue. The trial court determined the policies permitted Betty to recover individually the $5,000.00 medical payment and the $10,000.00 uninsured motorist coverage on the Monte Carlo policy as a result of her losses due to Donna's injuries, but denied recovery under the Toyota policy as the prior payments to Donna and her injured passenger exhausted its per occurrence limit.
State Farm assigns as error:
1. The trial court erred as a matter of law in aggregating per person limits of liability under uninsured motorists coverage in favor of an insured not bodily injured in addition to those aggregated in favor of the bodily injured insured;
2. The trial court erred in aggregating medical payments coverage provided in an insurance policy covering a 1978 Monte Carlo not involved in the accident;
3. The trial court erred in awarding pre-judgment interest, said award being against the overwhelming weight of authority and evidence.
Betty Acosta cross-appeals, alleging:
1. The trial court erred in failing to inform the jury of its determination that Betty Acosta was entitled to uninsured motorists benefits as a matter of law and the resulting verdict in favor of State Farm was against the overwhelming weight and sufficiency of the evidence.
We are of the opinion the trial court erred in aggregating the liability of State Farm under the Monte Carlo uninsured motorist coverage for Betty because she sustained no bodily injury. This determination is based upon Old Sec. Cas. Ins. Co. v. Clemmer, 455 So.2d 781 (Miss. 1984). *1091 Therein policy language, similar to that found in the State Farm policy issued to Betty Acosta, was held to limit the per occurrence recovery for damages to the amount stated in the policy declaration. The State Farm policy uninsured motorist coverage agreed:
To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motorist vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motorist vehicle ...
The State Farm policy also limited this liability by stating:
(a) The limit of liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person in any one accident, and subject to this provision, the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all such damages for bodily injury sustained by two or more persons in any one accident.
For reasons stated in Old Security v. Clemmer, supra, the limit of State Farm's liability (exclusive of medical coverage) for bodily injury sustained by any one person is $10,000.00 per policy. If two or more persons suffer bodily injury the per occurrence clause would be the $20,000.00 limit per policy. Unless there are at least two claimants, under the policy, who have sustained bodily injury, the $20,000.00 limit does not have application. In Old Security v. Clemmer, supra, as here, there was only one injured claimant. Betty Acosta was an insured under both policies but suffered no bodily injury, therefore, the policy limits were reached by the payments to Donna, the injured party.
Other jurisdictions have reached the same conclusion. See, United Services Auto Association v. Warner, 64 Cal. App.3d 957, 135 Cal. Rptr. 34 (1977), cited in Old Security v. Clemmer, supra. See also, Dunn v. Travelers Ins. Co., 6 Mass. App. 910, 378 N.E.2d 1007, 1008 (1978); Travelers Indemnity Co. v. Cornelsen, 272 Md. 48, 321 A.2d 149, 150 (1974); Skroh v. Travelers Ins. Co., 227 So.2d 328, 330 (Fla. Dist. Ct. App. 1969).
The trial court's award of medical payments to Betty Acosta under both the Toyota and the Monte Carlo policies was error. Medical payments coverage under the State Farm policy on the Monte Carlo automobile not involved in the accident does not aggregate with the coverage on the Toyota. State Farm Mutual Automobile Ins. Co. v. Scitzs, 394 So.2d 1371 (Miss. 1981). The facts in Scitzs, supra, are very similar to those in this case. Moreover, the policy provisions are identical to those issued to Betty Acosta. The trial court erred, in our opinion, in concluding that no exclusion existed in either policy for other vehicles owned by the insured. In Scitzs, supra, this Court determined there was an exclusion in policies identical to those presently under consideration. We stated, "... Coverage C [medical payments] applies only to the vehicle occupied at the time of the collision and not to the other vehicles described in the declarations of plaintiff's other policies." 394 So.2d at 1374. Donna is entitled to the $5,000.00 medical payments under the policy covering the Toyota involved in the accident but neither she nor Betty may recover medical payments under the terms of the policy on the Monte Carlo.
The trial court did not allow prejudgment interest on Donna's $5,000.00 medical payments. It did, however, award prejudgment interest on the $20,000.00 uninsured motorist benefits under both policies to accrue "from and after March 1, 1980, being after the Federal Government's lien was removed, up to and including January 21, 1983, being the date of this judgment, ..."
The record shows State Farm investigated the accident in a timely fashion. Medical payments were made in August, September, October, and December following the July 10, 1978, accident. Under the *1092 policy, the insured presenting the claim is responsible for furnishing medical reports or authorizing the insurer to obtain such so the claim can be processed. Several requests were made of Betty Acosta by State Farm so her claim could be completed, but without success. Additionally, at the time Donna was a patient in Keesler Air Force Hospital which had a policy preventing release of medical information without authorization.
After lengthy negotiations between Betty Acosta's attorney and those for State Farm, it was agreed in April of 1979, that a release would be executed to State Farm in return for it paying Donna's $20,000.00 uninsured motorist claim and that Betty would reserve any other rights of action for herself or Donna against State Farm, the release being specifically limited to Donna's uninsured motorist claim. A draft of a release was submitted to Betty Acosta's attorney by State Farm in April, 1979. At least two letters passed between the attorneys acknowledging receipt of the agreement, and neither indicated any changes should be made in the release. Simultaneously State Farm was communicating with the Air Force concerning its claim for reimbursement for medical services to Donna. State Farm eventually acquired the necessary medical report on Donna from the Air Force Claims Department in May, 1979.
In February, 1980, the Air Force Claims Officer at Keesler Field notified State Farm's attorney authority to waive their claim had been granted. However, because of governmental "red tape," a full waiver was not effected until May 29, 1980, when the Air Force notified Betty Acosta's attorney of the waiver. According to State Farm's attorney who was handling the claim, counsel opposite was notified the Air Force claim had been waived in February of 1980 and the balance of the medical payment coverage had been sent to Acosta and her attorney. Moreover, State Farm reaffirmed its willingness to have the $20,000.00 uninsured motorist coverage approved by the chancery court of the county since Donna was incapacitated and incompetent at the time. Subsequent offers to interplead the funds were apparently made during the following period prior to Acosta filing the suit. Without considering the numerous contentions and counter-contentions of the attorneys, it becomes apparent that State Farm was endeavoring to pay the Toyota policy coverage to Donna while reserving its right to contest any liability on the Monte Carlo automobile policy. Conversely, Betty Acosta was endeavoring to maintain her cause of action against State Farm for liability she asserted under the Monte Carlo policy. Between the push of one and the pull of the other, complicated by the reluctance of the Air Force to release its file on Donna Acosta, the payment was delayed.
We cannot conclude from the record that State Farm was arbitrary in their action concerning its tender of benefits. We are of this opinion because the medical claim of the Air Force was an impediment to early settlement and became the focus of time consuming negotiations between the attorneys thereby dissipating the arbitrariness factor found to exist in Dunnam v. State Farm Mutual Automobile Ins. Co., 366 So.2d 668 (Miss. 1979), and State Farm Mutual Automobile Ins. Co. v. Bishop, 329 So.2d 670 (Miss. 1976). We therefore think the trial court abused its judicial discretion in permitting prejudgment interest from the time the Air Force waived its claim to the date of judgment.
We have fully considered Betty Acosta's cross-appeal on the issue of punitive damages and conclude that it is without merit.
REVERSED AND RENDERED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.